UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| MARK JONES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-00225-SNLJ |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

On December 26, 2023, Petitioner Mark Jones ("Jones") filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to Title 28, United States Code, Section 2255 [Doc. 1].[1] Petitioner then filed an amended motion a Motion to Vacate, Set Aside or Correct Sentence on February 5, 2024 [Doc. 7]. This Court ordered the United States to show cause why the relief requested in Jones's motion should not be granted. The government filed a response on June 17, 2024 [Doc. 13]. Based on the reasons set forth below, this Court will dismiss Jones's claims as waived and procedurally barred or otherwise deny them without an evidentiary hearing because they fail as a matter of law.

## I. STATEMENT OF FACTS[2]

On May 7, 2022, Mark Jones drove his ex-wife's white Jeep Grand Cherokee to a church located near the Smoker's Cloud Vape Shop in Caruthersville, Missouri. PSR ¶¶

[1] Jones's initial untitled letter to the Court asking to have "some time cut" was construed as seeking relief under 28 U.S.C. § 2255. *See* Doc. 2.
[2] Jones did not object to any of the facts contained in the Presentence Investigation Report ("PSR") prepared after he pled guilty to Attempted Interference with Commerce by Robbery in case number 1:22-cr-00092-SNLJ ("Crim. Case").

7-9. At the church, Jones was captured on surveillance video from nearby stores putting on a white Tyvek suit and exiting the vehicle. *Id.* at ¶ 8. The surveillance video showed ones standing on the side of the building without a mask on. *Id.* Jones walked toward the Smoker's Cloud Vape Shop and placed gloves on his hands. *Id.* The Smoker's Cloud Vape Shop was also equipped with security cameras. *Id.* at ¶ 7. As Jones entered the store, surveillance video from the store captured him wearing the white Tyvek suit and gloves, along with a white mask and a white hood. *Id.* Jones was holding a backpack in front of him which appeared to conceal a firearm in his left hand. *Id.* Once Jones entered the store, the store clerk discharged a firearm at Jones. *Id.* The bullet from the clerk's firearm struck a soda cooler and not Jones. *Id.* Several customers inside the store ducked down behind slot machines. *Id.* Jones then fled in his ex-wife's white Jeep Grand Cherokee. *Id.*

On May 9, 2022, police officers spoke with Jones on the phone and asked Jones to meet them at a local police department for an interview. *Id.* at ¶ 9. During the interview, Jones initially denied being involved in the attempted robbery of the Smoker's Cloud Vape Shop but eventually confessed. *Id.* Jones admitted that he knew the clerk who was working at the store on May 7, 2022, and thought the robbery would be easy. *Id.*

## II. PROCEDURAL HISTORY

### A. Jones charged with Attempted Hobbs Act Robbery and pled guilty.

Based on the foregoing conduct, a federal grand jury charged Jones with one count of Attempted Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951(a). Crim. Case, Doc. 2. Jones subsequently pleaded guilty as charged. Crim. Case,

Doc. 25. There was no written plea agreement between the parties. Plea Tr. at 2.

At his change-of-plea hearing, the Court ensured that Jones was feeling well, his mind was clear, and he was ready to proceed. *Id.* at 5. The Court next confirmed that Jones was satisfied with his attorney, that she investigated the case to his satisfaction, that she had done everything he had asked her to do, and that Jones had no gripes or complaints whatsoever. *Id.* at 6. The Court informed Jones that, by pleading guilty, he was giving up his right to a trial by jury and detailed the rights Jones would be giving up by pleading guilty. *Id.* at 6-7. Jones reiterated that he wanted to give up his trial rights by pleading guilty. *Id.* at 7. The Court ensured that Jones was not pleading guilty due to any force, coercion, or threats. *Id.* at 7-8. The Court noted for Jones that most cases proceed with a guilty plea agreement and confirmed that Jones wanted to go a different route by entering an open plea with no promises on either side. *Id.* at 8. The Court confirmed that Jones understood the sentencing guidelines would be calculated and that he knew he would be able to object to how the guidelines were calculated if he disagreed with them. *Id.* at 8-9. The Court explained the statutory range of punishment for the crime Jones was pleading guilty to and told Jones that the Court would consider the full range of punishment. *Id.* at 10. Jones acknowledged that no one had told him or promised him what his sentence would be. *Id.* at 10-11.

The Assistant United States Attorney then recited the facts that the Government would have proven beyond a reasonable doubt at trial. *Id.* at 11-12. When asked if Jones agreed with the facts, his attorney interjected and notified the Court that the reason the parties were unable to reach an agreement was that Jones was disputing that the object he

pulled out of the backpack appeared to be a handgun. *Id*. at 12. Jones's attorney agreed with all other facts recited by the Government. *Id*. The Court, the attorneys, and Jones then engaged in a lengthy discussion about exactly what facts Jones was admitting and how those facts satisfied the elements of the offense to which Jones was pleading guilty. *Id*. at 12-18. At least five times throughout the discussion, Jones's attorney conveyed to the Court Jones's position that the object he was pulling out of the backpack as he entered the store for the purpose of robbing it was not a firearm. *Id*. at 12, 13 (twice), 15, 16. Jones's attorney also informed the Court that Jones would fight a firearm enhancement at sentencing. *Id*. at 13. Jones himself told the Court that he had a cellphone and not a firearm. *Id*. at 14-15. Throughout the hearing, the Court carefully and repeatedly ensured that Jones was admitting to attempting the rob the convenience store by the wrongful use of actual or threatened force, violence, or fear. *Id*. at 13-18. Jones repeatedly maintained his guilt. *Id*. Finally, based on Jones's admissions while under oath, the Court found Jones competent to enter the guilty plea, that the guilty plea was entered freely, knowingly, and voluntarily, and that Jones had admitted the essential elements of the offense. *Id*. at 18.

**B. Jones admits the firearm enhancement should apply and receives the sentence he asked for.**

After Jones's guilty plea, a Presentence Investigation Report ("PSR") was prepared. Crim. Case, Doc. 33. The PSR writer recommended that a five-level enhancement should apply as Jones attempted to rob the convenience store while in possession of a firearm. *Id*. at ¶ 17. Jones did not object to anything contained in the

PSR. Sent. Tr. at 2.

Jones's attorney filed a sentencing memorandum with the Court. Crim. Case, Doc. 32. In it, Jones's attorney again reiterated Jones's position that what he attempted to rob the store with was a cellphone held in a way that would appear as though he held a firearm. *Id*. at 1. Jones's attorney then directly addressed the applicability of the firearm enhancement:

> However, Mark has reviewed the video surveillance and reviewed the discovery. Based upon his review, he admits that the government could prove by a preponderance of evidence that he possessed a firearm. In addition, he agrees that the five-point enhancement should apply because it was his intention to make the clerk believe that he possessed a firearm.

*Id*. at 2. Next, Jones's attorney laid out the rationale for Jones's shift in position from wanting to contest the applicability of the firearm enhancement to accepting it. *Id*. If Jones had objected to the enhancement and won, his guidelines would have been 51 to 63 months. *Id*. However, if Jones would have objected, the Government would have sought a seven-level enhancement for a firearm being discharged. *Id*. If the Government would have prevailed, Jones's guidelines would have been 120 to 150 months. *Id*. After carefully considering what course to take, Jones decided to accept the PSR as written and asked the Court to impose the negotiated joint recommendation of 94 months, which was in the middle of the guidelines. *Id*. at 1-2.

At the sentencing hearing, the Court ensured that Jones personally received a copy of the PSR and that he had gone over it, in detail, with his lawyer. Sent. Tr. at 2. Jones had no additions, corrections, or objections to anything in the PSR. *Id*. The Court then reviewed the guideline calculations. *Id*. Again, Jones had no objection. *Id*. The

Government requested the Court follow the recommendation of the parties and impose a 94-month sentence, and Jones's attorney did the same, emphasizing that the parties had worked together to find a mutually agreeable disposition. *Id*. at 3-4. Jones was provided an opportunity to address the Court, which he used to apologize for taking up the Court's time. *Id*. at 7-8. The Court followed the parties' joint recommendation and sentenced Jones to 94 months in the Bureau of Prisons. *Id*. at 9. The Court directly informed Jones that he had a right to appeal the sentence, that he must do so within 14 days, and that failure to appeal within 14 days would be a waiver of his right to appeal. *Id*. at 11. The Court also directly informed Jones that he was entitled to the assistance of counsel in taking an appeal, and that if he could not afford a lawyer, one would be appointed to represent him. *Id*. Jones acknowledged that he understood his right to appeal. *Id*. After sentencing, Jones signed the Notice of Compliance with Local Rule 12.07(A) form, indicating that his attorney had explained his right to appeal to him and that he did not wish to pursue an appeal. Crim. Case, Doc. 37. Jones never appealed his conviction or sentence.

Less than one year later, Jones filed what has been construed as a Motion to Vacate and subsequently amended the Motion. Docs. 1, 7. In his Amended Motion, Jones raises claims related to ineffective assistance of counsel and a claim of prosecutorial misconduct. All claims plainly fail on the merits.

## III. LEGAL STANDARD

"Section 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011)

(en banc) (quotation omitted). And like habeas corpus, this statutory remedy "does not encompass all claimed errors in conviction and sentencing." *Id.* (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). Under section 2255(a), a petitioner may file a motion for post-conviction review on four specified grounds: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'" *Martin v. United States*, 150 F. Supp. 3d 1047, 1049 (W.D. Mo. 2015) (quoting *Hill v. United States*, 368 U.S. 424, 426–27 (1962)); see also R. GOVERNING § 2255 PROCEEDINGS 1. The petitioner bears the burden of proof as to each asserted ground for relief. *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019) (citation omitted).

Claims challenging the sufficiency of the evidence are not of constitutional or jurisdictional significance and are therefore not appropriate in motions under § 2255. *See Anderson v. United States*, 25 F.3d 704, 707 (8th Cir. 1994) ("[a] claim that all of a crime's statutory elements were not proven is not a constitutional claim for the purposes of collateral attack").

In addition, the Eighth Circuit and its sister circuits have consistently held "that ordinary questions of guideline interpretation falling short of the 'miscarriage of justice' standard do not present a proper section 2255 claim." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quoting *Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (other citations omitted)). Under *Sun Bear*, only unlawful or illegal

sentences—sentences imposed without or in excess of statutory authority—may be challenged in a § 2255 motion. *Sun Bear*, 644 F.3d at 705.

The claims raised by a movant must go beyond mere allegations and must not be so incredulous as to be unbelievable. "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985); *see also Carpenter v. United States*, 720 F.2d 546, 548 (8th Cir. 1983) (conclusory allegations are insufficient to rebut the presumption of competency granted to defense counsel); *United States v. Bryson*, 268 F.3d 560, 562 (8th Cir. 2001) (conclusory allegations are insufficient to establish ineffective assistance of counsel).

**A. Claims Alleging Ineffective Assistance of Counsel**

"A defendant faces a heavy burden to establish ineffective assistance of counsel pursuant to section 2255." *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (quotation omitted). The Supreme Court has held that the two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

To establish ineffectiveness regarding the plea, a movant must show that "there is a reasonable probability that, but for counsel's errors, [the movant] would not have pleaded guilty and would have insisted on going to trial." *Id.*; *Thomas v. Lockhart*, 738 F.2d 304, 307 (8th Cir. 1984). Further, the "prejudice" inquiry will often require the court to assess whether the alleged error, if corrected, would have resulted in an acquittal

at a subsequent trial. *Hill*, 474 U.S. at 59-60.

To establish prejudice regarding the sentence, a defendant must show a reasonable probability that, but for counsel's errors, the defendant would have received a lesser sentence than he did. *Jeffries v. United States*, 721 F.3d 1008, 1014 (8th Cir. 2013) (citing *Puckett v. United States*, 556 U.S. 129, 142 n. 4 (2009)).

In evaluating counsel's conduct, the court should avoid "the distorting effects of hindsight," *Strickland*, 466 U.S. at 689; and "try to evaluate counsel's conduct by looking at the circumstances as they must have appeared to counsel at the time." *Rodela-Aguilar v. United States*, 596 F.3d 457, 461 (8th Cir. 2010) (quotation omitted). A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (quoting *Strickland*, 466 U.S. at 689). Counsel's strategic decisions "made after a thorough investigation of law and facts . . . are virtually unchallengeable," *Strickland*, 466 U.S. at 690, even if that strategic decision proves unwise. Whether a court agrees with a defense counsel's strategy or analysis is not the test to be followed. *Rodela-Aguilar*, 596 F.3d at 464 (citing *Wing v. Sargent*, 940 F.2d 1189, 1191-92 (8th Cir. 1991)).

**B. Claims Alleging Prosecutorial Misconduct**

"As a general rule, prosecutorial misconduct does not merit federal habeas relief unless the misconduct infected the trial with enough unfairness to render [a] petitioner's conviction a denial of due process." *Stringer v. Hedgepeth*, 280 F.3d 826, 829 (8th Cir. 2002) (internal quotations and citations omitted). Echoing the *Strickland* standard for ineffective assistance, "A two-part test determines whether prosecutorial misconduct has

occurred: first, the prosecutor's conduct or remarks must have been improper, and second, the remarks or conduct must have prejudicially affected the defendant's substantial rights by depriving the defendant of a fair trial." *Graves v. Ault*, 614 F.3d 501, 507–08 (8th Cir. 2010). Thus, to warrant relief, a petitioner "must show that there is a reasonable probability that the error complained of affected the outcome of the trial – i.e., that absent the alleged impropriety the verdict probably would have been different." *Id*. (internal quotations and citations omitted). Importantly, however, a "[Movant's] guilty plea forecloses all pre-plea non-jurisdictional attacks on his conviction, including prosecutorial misconduct." *United States v. Shafer*, 176 F. App'x 707, 707 (8th Cir. 2006).

**C. Need for an Evidentiary Hearing**

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless 'the motion and the files and the records of the case conclusively show that [he] is entitled to no relief.'" *Holder v. United States*, 721 F.3d 979, 993 (8th Cir. 2013) (quoting 28 U.S.C. § 2255(b)). "No hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *United States v. Anjulo-Lopez*, 541 F.3d 814, 817 (8th Cir. 2008) (quotation omitted). For instance, "[a] district court need not hold an evidentiary hearing if the facts alleged, taken as true, would not justify relief." *Larson v. United States*, 905 F.2d 218, 221–22 (8th Cir. 1990) (citation omitted). Moreover, in conducting this inquiry, courts may not give weight to "conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." *Simmons v. United States*, Case No.

1:16-cv-00101-SNLJ, 2016 WL 5941929 (E.D. Mo. Oct. 13, 2016) (citation omitted); *see also Ford v. United States*, 917 F.3d 1015, 1026 (8th Cir. 2019) (reaffirming long-standing rule of dismissing allegations that "are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."). In the ineffective-assistance context, a court "must consider the validity of a petitioner's allegation of ineffective assistance of counsel" in light of the record to determine whether an evidentiary hearing is necessary. *Holder*, 721 F.3d at 994 (quotation and internal alterations omitted).

## IV. DISCUSSION

Jones advances four grounds for post-conviction relief: three related to alleged ineffective assistance of counsel and one related to alleged prosecutorial misconduct. All are refuted by the record, not cognizable in a § 2255 proceeding, or both.

### A. Jones's counsel informed the Court of Jones's claim that he did not have a gun, and Jones knew the significance of the firearm enhancement.

Jones attempts to bundle several claims within Ground One of his Motion. The first is that "Counsel refused to object or inform the court that there was no gun, and misled Movant into causing him to believe that there was no need to argue the gun." Mot. at 4.

It is difficult to imagine a claim more thoroughly refuted by the record than this. A large portion of the plea hearing was a discussion entirely about whether Jones had a gun. Plea Tr. at 12-18. At least five times throughout the discussion, Jones's attorney conveyed to the Court Jones's position that the object he was pulling out of the backpack as he entered the store for the purpose of robbing it was not a firearm. *Id.* at 12, 13

(twice), 15, 16. Jones himself told the Court that he had a cellphone and not a firearm. *Id*. at 14-15. Jones's attorney again conveyed Jones's position that he didn't have a gun in the second sentence of her sentencing memorandum. Crim. Case, Doc. 32. Clearly, Jones understood the significance of whether he attempted to rob the convenience store with a gun or not and repeatedly claimed he did not. However, as Jones's attorney meticulously explained, "Mark has reviewed the video surveillance and reviewed the discovery. Based upon his review, *he admits that the government could prove by a preponderance of evidence that he possessed a firearm."* (emphasis added) *Id.* at 2. Furthermore, whether or not he actually had a firearm "he agrees that the five-point enhancement should apply because it was his intention to make the clerk believe that he possessed a firearm." *Id.*

The first bundle of claims Jones presents in Ground One are refuted by the record, and Jones fails to satisfy either prong of *Strickland*.

**B. Jones cannot challenge the five-point enhancement for attempting to commit the robbery with a firearm in his § 2255 motion, and his attorney was not ineffective for allegedly failing to investigate the victim's story.**

The second bundle of claims Jones asserts in Ground One are harder to decipher. Jones appears to complain about receiving a five-point enhancement for attempting to rob the convenience store with a firearm and takes issue with his attorney's lack of investigation to determine that he never brandished a firearm. Mot. at 4. These claims fail for several reasons.

First, to the extent Jones complains about the application of the sentencing guidelines, that complaint is not cognizable in a § 2255 motion. *Sun Bear*, 644 F.3d at

704-05 ("ordinary questions of guideline interpretation falling short of the 'miscarriage of justice' standard do not present a proper section 2255 claim.").

Second, even if the claim was cognizable, Jones admitted that the enhancement should apply in his sentencing memo and never objected to anything in the PSR at sentencing. *See* Crim. Case, Doc. 32 at 1-2; Sent. Tr. at 2-3.

Third, Jones never received an enhancement for brandishing the firearm, so it is unclear how his attorney could be ineffective for something that never occurred. As for Jones's allegation that his attorney insufficiently investigated the case, this claim is also refuted by the record. Under oath, Jones affirmatively stated that his attorney had investigated the case to his satisfaction. Plea. Tr. at 6. Further, given that the entire crime was captured on surveillance video, that Jones confessed to attempting to rob the store because he knew who the victim was and thought that person would be easy to rob, and then pled guilty under oath in open court, it is again unclear how any statement Jones's attorney could have elicited from the victim would have been outcome determinative.

Again, Jones's claims are refuted by the record and fail to satisfy either prong of *Strickland*.

**C. Jones pled guilty knowing the five-point enhancement might be applied and he is not legally or factually innocent.**

Next, in Ground Two, Jones asserts that his attorney failed to advise him that the five-point enhancement for attempting to rob the convenience store might apply and has the audacity to claim he is somehow innocent. His claims are refuted by the record.

Jones pled guilty knowing the five-point enhancement might be applied. To establish a factual basis for the plea, counsel for the Government recited a summary of the facts of the case. Plea Tr. at 11-12. Jones personally agreed with all of the facts recited by the Government, with the exception that what he pulled out of the backpack upon entering the store appeared to look like a gun. *Id*. at 14. The importance of the gun was not lost on the parties or the Court, and a significant portion of the hearing revolved around the question of whether Jones had a gun during the attempted robbery. *Id*. at 12-18. The Court informed Jones that he would have the right to challenge any determination made in the PSR. *Id*. at 9. Jones's attorney, and counsel for the Government, both announced their intention to take advantage of that right to litigate the firearm enhancement at sentencing. *Id*. at 13. After making a thorough record, the Court ensured that Jones's plea was freely, knowingly, and voluntarily made. *Id*. at 18. While Jones later changed his mind about wanting to litigate the firearm enhancement, that does not somehow nullify the knowing nature of his plea.

Also in Ground Two, after complaining about being assessed the five-point enhancement, Jones brazenly asserts that he did not commit the crime. Mot. at 5. That claim is not cognizable in a § 2255 proceeding and is refuted by the record. A movant faces a two-prong hurdle in establishing "actual innocence." First, the movant must present new, reliable evidence that was not presented at trial. Such new evidence could be "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Bannister v. Delo*, 100 F.3d 610, 615 (8th Cir. 1996) (quoting *Schlup*, 513 U.S. at 324). After presenting such new evidence, the movant must then establish that "it

is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327-28; *see also Bousley v. United States*, 523 U.S. 614, 623 (1998).

The Supreme Court has reiterated that for a claim of actual innocence to be credible, it "must be based on reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998). Determining whether no reasonable juror would have found the movant guilty "turns upon an examination of the whole record to ascertain what inferences are reasonable in light of the evidence presented." *Hohn v. United States*, 193 F.3d 921, 924 (8th Cir. 1999).

In addition to those restrictions, the actual innocence claim only applies to claims of factual innocence as opposed to legal innocence. *Anderson v. United States*, 25 F.3d 704, 707 (8th Cir. 1994); *Narcisse v. Dahm*, 9 F.3d 38, 40 (8th Cir. 1993) (holding that petitioner could not establish actual innocence by raising legal and not factual issues). Proving factual actual innocence requires "clear and convincing evidence that, but for an alleged constitutional error, no reasonable juror would have found the petitioner guilty." *Anderson*, 25 F.3d at 706-07.

However, in the Eighth Circuit, the actual innocence exception does not apply to non-capital sentences. *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001). Therefore, Jones may not proceed under that exception.

Even if Jones were allowed to bring this claim, it would be thoroughly refuted by the record. Jones committed the attempted robbery on surveillance video, was caught and confessed, and pled guilty in open court while under oath. *Blackledge v. Allison*, 431

U.S. 63, 74 (1977) (Statements made by a defendant in court under oath should not be lightly set aside and "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.").

Again, Jones's claims are refuted by the record and fail to satisfy either prong of *Strickland*.

**D. Jones knew his appellate rights, chose not to exercise them, and his remaining claims are not cognizable in this § 2255 proceeding.**

Jones's remaining claims in Grounds Three and Four can be dealt with speedily. Jones seems to believe that he had a right to appeal directly to the Supreme Court of the United States within 90 days of his sentencing, and that his attorney was ineffective for not telling him so. Mot. at 7. He is incorrect. The Court accurately informed Jones of his appellate rights. Sent. Tr. at 11. As Jones acknowledged, his attorney discussed the right to appeal with him, and Jones decided not to file an appeal. Crim. Case, Doc. 37. The right Jones complains of being denied simply does not exist.

Jones asserts both ineffective assistance and prosecutorial misconduct in securing the indictment to which he pled guilty. Mot. at 7-8. But his guilty plea foreclosed all pre-plea non-jurisdictional attacks on his conviction, including prosecutorial misconduct. *United States v. Shafer*, 176 F. App'x 707, 707 (8th Cir. 2006). As Jones admitted at his interview and at his guilty plea, he did attempt to rob the store. Therefore, the Indictment was not fraudulent.

Jones challenges the sufficiency of the evidence to support a conviction for the attempted robbery which he committed on surveillance video, confessed to committing,

and pled guilty to committing in open court. Mot. at 7. But claims challenging the sufficiency of the evidence are not of constitutional or jurisdictional significance and are therefore not appropriate in motions under § 2255. *See Anderson v. United States*, 25 F.3d 704, 707 (8th Cir. 1994) ("[a] claim that all of a crime's statutory elements were not proven is not a constitutional claim for the purposes of collateral attack").

Jones alleges that his attorney "improperly" advised him to plead guilty but fails to allege what was improper about that advice and fails to allege that, but for her advice, he would have insisted on going to trial. Mot. at 7. His conclusory allegations unsupported by specifics are subject to summary dismissal, as are contentions that in the face of the record are wholly incredible. *Allison*, 431 U.S. 63 at 74; *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985); *see also Carpenter v. United States*, 720 F.2d 546, 548 (8th Cir. 1983) (conclusory allegations are insufficient to rebut the presumption of competency granted to defense counsel); *United States v. Bryson*, 268 F.3d 560, 562 (8th Cir. 2001) (conclusory allegations are insufficient to establish ineffective assistance of counsel).

## V. CONCLUSION

For the foregoing reasons, this Court will deny Petitioner's § 2255 motion [Doc. 1] without an evidentiary hearing.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability because Petitioner has not made a substantial showing of the denial of federal constitutional right.

**SO ORDERED** this 24th day of November, 2026.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE